Thompson Grimes and others v. Firman G. Rose.

*Chattel mortgage: Conversion: Trover.* A tenant, who was working a farm on shares, in July, 1866, executed a chattel mortgage to his landlord for one hundred and fifty dollars, upon two-thirds (his share) of all the wheat that should be sown the next fall on the farm, and one-half (his share) of all the wool grown on the sheep kept on the farm, which mortgage was duly filed, and in 1867 duly renewed. In the fall of 1867 the tenant sowed a parcel of the land

GRIMES *v.* ROSE.

to wheat, which gave a crop of three hundred and five bushels when harvested in 1868, and the wool taken from the sheep in 1868 amounted to three hundred and sixty-three pounds. In February, 1868, the tenant inserted, in the body of the old mortgage on file, an agreement which he signed, "that this mortgage shall cover and be a lien upon all the property above specified, the same for the year 1868, as it did for the year 1867;" and subsequently surrendered possession of the farm and sheep to his landlord and removed from the premises:

*Held,* That the mortgage and the stipulation should be construed together as creating a mortgage; and that as between such mortgagee and a second mortgagee, whose mortgage was executed after the former had possession of the property, a sale of the property upon said first mortgage does not constitute a conversion such as to make said first mortgagee liable in an action of trover.

*Possession: Notice.* A second mortgagee of personal property in possession of a prior mortgagee, takes with notice of all the rights of such prior mortgagee.

*Heard April 4. Decided April 10.*

Case made after judgment from Livingston Circuit.

*A. D. Waddell* and *George V. N. Lothrop,* for plaintiffs.

*Norris & Blair,* for defendant.

GRAVES, J.

This is a case made after judgment. The plaintiffs, as mortgagees of one Charles Blades, brought trover, for a quantity of wheat and wool, against the defendant, under the following circumstances:

For some time, but how long, the case does not inform us, Blades, the mortgagor, worked the defendant's farm on shares, under a parol arrangement, by which Blades was to have two-thirds of the wheat raised and half of the wool from the defendant's flock of sheep on the premises.

The last year of the term expired on the first of April, 1868. In July, 1866, Blades was indebted to defendant upon a promissory note then given, in the sum of one hundred and fifty dollars, payable in a year, with interest at ten per cent.; and to secure this note he then executed a mortgage to defendant, on personal property, of which a part was described as being two-thirds of all the wheat that should be sown the then coming fall on the farm, and one-half of

24 MICH.—53.

all the wool grown on the sheep kept on said farm. This mortgage was put on file the day of its date, July 27, 1866, and on the 26th of July, 1867, the defendant also filed his affidavit stating that he was the owner of the mortgage, and that there remained due upon it the sum of one hundred and sixty-five dollars.

In the fall of 1867, Blades sowed a parcel of the land to wheat, which gave a crop of three hundred and five bushels when it was harvested, in 1868. The wool taken from the sheep in 1868 amounted to three hundred and sixty-three pounds.

While this wheat was growing on the ground, and the wool upon the sheep, and on the 28th of February, 1868, Blades inserted in the body of the old mortgage, on file, the following instrument:

"I, Charles Blades, hereby agree that this mortgage shall cover, and be a lien upon, all the property above specified, the same for the year 1868, as it did for the year 1867.

(Signed)      "CHARLES $\times$ BLADES."

On the first of April following, Blades surrendered possession of the farm and sheep to defendant, and about the twentieth of the same month, removed from the premises.

On or before the 19th of March in the same year, Blades became indebted to the plaintiffs on store account, and upon settlement on that day a balance was found in their favor for sixty-eight dollars and fifty cents. On the first or second day of May thereafter, and about a month after Blades had given up possession of the property to Rose, Blades executed, under date of March 19, 1868, and delivered, his mortgage to the plaintiffs on two-thirds of eighteen acres of wheat, described as that sown by him on the farm he *then occupied*, belonging to defendant, and specifying the farm he had been working on shares. The mortgage

also described one-half of all the wool of forty-eight sheep kept on said farm.

The consideration expressed was two hundred and sixty-eight dollars and fifty cents, and the condition required that sum to be paid, with interest at ten per cent., on the first day of July, 1868, according to a certain note bearing even date. This mortgage was filed on the second day of May, 1868, and at that time one of the plaintiffs saw at the office the old mortgage from Blades to defendant, with the stipulation before mentioned embodied in it. The only existing consideration for the mortgage to plaintiffs, was the indebtedness of sixty-eight dollars and fifty cents; but when that mortgage was given, the plaintiffs agreed to advance him two hundred dollars, and this they paid him in money the latter part of August, 1868. As the case states, this security was ante-dated to obtain interest from March 19.

As already stated, when this mortgage was made and delivered the whole property was in the exclusive possession of defendant, who, under the arrangement with Blades for cropping, was a tenant in common, and claimed also as mortgagee in possession of whatever interest Blades held. That part of the description in the plaintiffs' mortgage which located the wheat and wool on the farm then occupied by Blades, was certainly inapplicable, because, at that time, Blades did not occupy the farm in question. But this would probably not impair their lien upon the property, the residue of the description being definite and accurate, as seems to be admitted.

Blades neglecting to pay the note given to defendant, the latter proceeded in June, 1868, to enforce collection of it by a sale of Blades' interest in the wheat and wool, under the papers in the clerk's office already described, and which the defendant treated as amounting to a chattel mortgage.

The wheat was bid off by him and remained in his possession at the time the plaintiffs commenced their suit.    The wool was purchased by other parties; but the proceeds were received by him.

In the following November the plaintiffs brought this suit to recover damages for the conversion of the shares of the wheat and wool thus involved in the two adverse claims, and the court awarded judgment in their favor for the conversion of the wheat and wool.

The defendant has mooted several points, but upon the view I entertain it is unnecessary to go beyond a single ground in order to decide the case.    When we consider the positions occupied by the respective parties, including Blades, and the relations of these parties to the property in dispute, it is evident that if the papers in the clerk's office, made by Blades to Rose, invested the latter, as against Blades, with all the substantial rights of a mortgagee, then the disposition made of the property by Rose was not a conversion as against the plaintiffs, and afforded them no ground of action against him.    The case exhibits no act on the part of Rose which was not strictly legitimate if he had the rights of a mortgagee.

The plaintiffs contend that the mortgage given to defendant in 1866 was invalid, because it assumed to mortgage property not in existence, and besides, that the property it assumed to describe, though of the same kind, was not the same covered by their mortgage.    They also insist that the writing of February, 1868, if of any force, must be held to refer to the specific wheat and wool mentioned in the first mortgage, or possibly to wheat sown in the fall of 1868, and therefore that such paper could not affect the question of title to the property in suit.    It is finally urged, however, that the regulations by statute for

the protection of third parties, through proceedings in the clerk's office, require that a full mortgage should be made and filed, and that an entry, such as was made in this instance, cannot affect subsequent mortgagees.

We have seen that when the plaintiffs obtained their ante-dated mortgage, the mortgagor was not in possession, but the defendant was in possession as tenant in common and under a claim of right as mortgagee; and if, as between Blades and Rose, the arrangement between them gave the latter a lien in the nature of a mortgage, this state of the possession was notice to the plaintiffs of the rights of Rose, or at least was a fact sufficient to put them upon inquiry, and to charge them with the knowledge to which such inquiry must have led.

When they received this mortgage of Blades, upon property out of his possession and in the possession of Rose, they were not subsequent *bona fide* mortgagees against him in any such sense as would enable them to overreach any honest lien he had upon the property, whether his lien was or was not evidenced by formal documents, filed or unfiled. Any honest lien of his, supported by his actual possession of the property, was as fully entitled to protection against subsequent mortgagees as his title would have been if he had fairly become absolute owner. Whatever lien, if any, Rose had, was superior to that of the plaintiffs, and their rights were subject to his. The good faith of the transaction between Rose and Blades is not questioned; nor is it pretended that the plaintiffs did not have explicit notice, when they received their mortgage, that Rose claimed under the papers in the clerk's office.

The true inquiry is into the legal construction and effect of those papers in the light of the surrounding facts. Upon this point I think there is no room for doubt. The note from Blades to Rose remained unpaid. The mortgage given

GRIMES *v.* ROSE.

to secure it remained in the clerk's office, but had become inoperative as to the wheat and wool. Blades was still on the farm, but his term would expire before it would be time to put in more crops; and it cannot be inferred that it was contemplated that he should put in crops in the season of 1868. The wheat in question was on the ground, and the sheep mentioned were on the premises. The wool and wheat would come off in the season of 1868. Under these circumstances the writing of February was made. It is very imperfect and awkward, but no more so than many instruments seen in commercial transactions of larger dimensions. The parties to it intended that it should have effect as a mortgage; and I think, as against Blades and in favor of Rose, the old mortgage and the stipulation should be read together and construed as creating a mortgage, as they intended, on the wheat and wool.

If Blades had made no transfer after the entry of February, 1868, and had himself brought this suit against Rose, I think the papers he executed, under the circumstances in which he gave them, would have been a perfect answer to his suit. The sufficiency of Rose's lien as against him would have been allowed; and in the attitude of the parties, and upon the facts stated in the record, I do not perceive that the plaintiffs are in any better position than Blades would have occupied in the supposed contingency. I think no conversion was established.

If correct in this view, the judgment must be reversed, and a judgment entered in this court for the defendant, with the costs of both courts.

The other Justices concurred.